ROBERT BICE v. STATE OF NEBRASKA.

FILED SEPTEMBER 21, 1906.   No. 14,603.

Assault: EVIDENCE.   To sustain a conviction for assault with intent to inflict great bodily injury, as defined by section 17b of the criminal code, the evidence must show an attempt to inflict an injury of a greater and more serious character than an ordinary battery.

ERROR to the district court for Boyd county: JAMES J. HARRINGTON, JUDGE.   Reversed.

M. F. Harrington, for plaintiff in error.

Norris Brown, Attorney General, and W. T. Thompson, contra.

BARNES, J.

Robert Bice was convicted in the court below of an assault upon one James Adkins with intent to inflict great bodily injury, and was sentenced to a term of imprisonment in the state penitentiary. He has brought the record to this court for review, and will hereafter be called the defendant.

It is first urged that the verdict is not sustained by sufficient evidence. The information on which he was tried charged a violation of section 17b of the criminal

code, and we have held in several cases that the words "great bodily injury," as employed in that section, imply an injury of a greater and more serious character than an ordinary battery. *Murphey v. State*, 43 Neb. 34; *Likens v. State*, 63 Neb. 249.

A careful consideration of the entire testimony contained in the bill of exceptions satisfies us that the offense of which the defendant was convicted was not established on the trial beyond a reasonable doubt. It appears that the defendant and the prosecuting witness were in the village of Spencer, in Boyd county, Nebraska, on the 1st day of August, 1905, and happened to meet on the street, in front of a saloon conducted by one Joseph Corab. Both had been drinking, but the defendant was the more intoxicated. When he saw Adkins he said, in substance: "Here is a man who has been shunning me for a couple of months, and I am going to lick him right here." Some further talk ensued, in which the defendant threatened to lick the prosecuting witness, who at first was not disposed to fight. Seeing, however, that the defendant was determined to lick him, as he called it, he told him to pick his ground. The defendant threw off his vest, and struck at Adkins, but missed him, and thereupon clinched him, thus attempting to throw him to the ground. He failed in his attempt, for when the parties clinched it was found that Adkins was the better man. To use his own words: "I picked Bob up, and threw him down on the sidewalk, and choked him." He also said he thought at that time the defendant was trying to get his revolver out, and that he threatened to shoot. About that time parties interfered and took Adkins off from the defendant. As soon as they released him, however, he went back and turned the defendant over, and, as he says, "attempted to take the gun away from him." Up to this time the defendant had not drawn his revolver. The bystanders again seized the prosecuting witness and pulled him away from the defendant, who thereupon arose to his feet, and tried to draw his revolver. As soon as he had it in sight, a man by the name of Shan-

non grabbed it, took it away from him and delivered it to one Doctor Snyder. There were several parties hold of Adkins at the time, and after the defendant's revolver was taken away, he slipped around, and struck Adkins in the face with his fist. He thereupon turned away and went down the street, where he met the marshal, who arrested him for being drunk and disorderly.

There is no evidence in the record which shows or tends to show there had been any ill feeling between Adkins and the defendant previous to this time; and the testimony shows, without dispute, that no difficulty had theretofore occurred between them. It is reasonably clear, also, that neither the prosecuting witness nor the defendant knew that the other was in town until they met in front of Corab's saloon. It further appears that since the affray the parties have been on speaking terms, and, to use Adkins' own words, on one occasion at least, "drank out of the same bottle." There is no evidence tending to show that the defendant armed himself with a revolver for the purpose of assaulting Adkins at or before the time the difficulty occurred. On the contrary, the defendant's son, who came to town with him, testified that they brought the revolver to town in order to get some cartridges that would fit it, as they did not know its caliber. It would also seem from the testimony that if the defendant had not been drinking he would have had no difficulty with Adkins. That Adkins thought nothing of the matter is clear, because he made no complaint against the defendant, and only appeared and testified against him in obedience to a subpœna served on him for that purpose.

In the case of *Likens v. State, supra,* the assault was there made with a butcher knife. The prosecuting witness was slightly wounded, but the court held that the evidence was not sufficient to justify a conviction for assault with intent to inflict great bodily injury.

In the case of *Smith v. State,* 58 Neb. 531, the evidence tended to show that the accused saw the prosecuting witness driving some of his stock. He thereupon went home,

unhitched his team, hitched one of his horses to a road cart, in which he had placed a shotgun, jumped into the cart, and drove along the road after the parties who had the stock, until he overtook them, when he alighted from the cart, took therefrom the shotgun, and accosted Jenkins, who was along the highway behind the stock. The accused called Jenkins vile names, and demanded that the stock be released. He punched Jenkins on the legs and in the sides with the barrel of the gun. Jenkins took hold of the gun, and the accused struck him a number of times on the head and in the face. The court said: "The record before us discloses an aggravated assault and battery by him, but not an assault to do great bodily injury; hence the sentence must be reversed and the cause remanded."

The case of *People v. Lennon,* 71 Mich. 298, is an instructive one. In that case the court said:

"We find no evidence in the case warranting a conviction of the respondent of any greater offense than assault and battery. * * * Ryerse was not hit by a bullet, and there is no testimony showing that respondent meant to shoot him. Ryerse was not hurt, to speak of, and was more to blame than defendant. * * * There was testimony tending to show that there had been trouble for some time between the Ryerse family and Lennon. Lennon claimed that for a long time he had been the subject of many indignities and outrages on the part of Ryerse and his father, and others who were in league with them. * * * He therefore, on the morning of July 5, stopped Ryerse as he was passing his house, and expostulated with him; asked him, 'How long are you going to torment me in this way?' Ryerse gave him an insulting answer, which led to blows. Ryerse claims Lennon struck first, and the respondent swears that Ryerse assaulted him, backing him towards his gate, and 'punching' him in the face. Lennon testifies that he was sickly, and scared; that he considered his life in danger, as he was so weak that he felt that one good blow, 'the least thing in the world, would lay me out; it would knock me dead.' He claims he fired his

pistol the first time to scare Ryerse, but, as Ryerse kept on afterwards following him up and striking him, he struck Ryerse on the ear with the revolver, and it went off the second time accidentally. Whether Ryerse first assaulted Lennon or Lennon first struck Ryerse on this morning of July 5, is immaterial. At the best, Lennon was only guilty of assault and battery."

In the case at bar the evidence is insufficient to show, beyond a reasonable doubt, that when the defendant assaulted Adkins he had the intention to inflict upon him great bodily harm within the meaning of the statutes. It is true that he drew his revolver during the affray, and when he was getting the worst of the encounter, but before he could use it so as to endanger the life of Adkins it was wrested from him. So if he had formed, at that instant, an intent to inflict great bodily harm upon Adkins he neither had the means nor the present ability to carry out his intent. To our minds, the case made is one of ordinary assault and battery; and, being of opinion that the evidence does not sustain the verdict, it is unnecessary to consider any of the other errors assigned.

The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.