## THE PEOPLE v. TIMOTHY COUGHLIN.

*Criminal law—Impaneling jury—Challenge to array—Documentary evidence—Statements of respondent—Proceedings before coroner's jury—Homicide—Self-defense—Charge to jury.*

1. An order for the drawing and summoning of a jury *according to law*, made under How. Stat. § 7578,[1] is, in *effect*, an order that such jurors be drawn from the county *at large*, as specified and directed by the statute.
2. The objection to the jury drawn in *People v. Hall*, 48 Mich. 487, was that they were neither a jury of the vicinage nor a jury of the county at large, nor one desired by the judge himself for the general purposes of the term, and therefore not sanctioned by law.
3. The *arbitrary* omission of certain townships in drawing and summoning a jury is good ground for quashing the array.

[1] How. Stat. § 7578.—"Whenever, for any cause, grand or petit jurors shall not have been drawn and summoned to attend any circuit court, or a sufficient number of qualified jurors shall fail to appear, such court may, in its discretion, order a sufficient number of grand or petit jurors, or both, to be forthwith drawn and summoned to attend such court: *Provided*, that in drawing jurors under this section the court may, for the purpose of obtaining a jury or talesmen near the county-seat, direct from which townships or supervisor districts such jurors shall be drawn."

4. The burden of proof is on the respondent who challenges the array to show the invalidity of the proceedings by which the jury was obtained, and, in the absence of a contrary showing, it must be presumed that the officers drawing such jury faithfully and correctly performed that duty.

5. Where documentary evidence is excluded by the court, or a *portion* is admitted, and the claim is that the whole should have been introduced, such excluded evidence, or the portion not introduced, should be made a part of the bill of exceptions, to enable the appellate court to judge of its admissibility.

6. On the trial of a respondent for homicide, a witness testified to respondent's reading a newspaper account of the transaction, and to his admitting it to be correct, except in one or two particulars; and the prosecuting attorney was permitted to introduce in evidence a *portion* of the article, purporting to be a statement of the circumstances of the case as taken from the evidence of the respondent at the coroner's inquest, against the objection of the respondent that the *whole* should be introduced, or none.

 *Held,* that, if the entire article had not been made a part of the manuscript bill of exceptions, the conviction should be reversed; but as a perusal of it showed that the admission of the excluded portion would have prejudiced the respondent, he cannot complain.

7. The proceedings before, and verdict of, a coroner's jury, including the testimony of a party charged with the homicide, is inadmissible in his behalf on his trial, for the purpose of showing that his testimony agreed on both occasions, and that the coroner's jury found that the shooting was done in self-defense.

8. The following instructions to the jury, in a homicide case, on the subject of self-defense, are approved by the Court.

 *a*—One assailed in his dwelling-house is not obliged to flee therefrom, but is authorized to repel force by force, and protect himself and house from intrusion; and if in the reasonable exercise of his right of self defense, as appeared to him at the time, he kills his assailant, the killing will be justifiable homicide.

 *b*—The burden of proof is upon the prosecution to satisfy the jury, beyond a reasonable doubt, that the killing was *not* in self-defense, and that no *reasonable* belief existed in respondent's mind at the time that he was in great bodily danger, as the facts and circumstances *then* appeared to him.

9. It is error for the court to instruct the jury *what* the testimony *tends* to prove, without in the same connection submitting to them the question of its *credibility. Davis v. Gerber,* 69 Mich.— (37 N. W. Rep. 284, 285.)

Error to Chippewa. (Steere, J.) Argued October 27, 1887. Decided November 3, 1887.

Information for murder. Respondent was convicted of manslaughter. Conviction affirmed. The facts are stated in the opinion.

*Lawrence F. Bedford* (*Brennan & Donnelly,* of counsel), for respondent.

*Moses Taggart,* Attorney General, for the People.

MORSE, J. The respondent was convicted of the crime of manslaughter in the circuit court for the county of Chippewa, for shooting and killing one Joseph Perault.

It is complained, first, as a reason for the reversal of this conviction, that a legal jury was not summoned at the term of court in which his trial took place.

A motion was entered challenging the array for the following reasons:

1. Said panel was not drawn 14 days before the first day of the term.

2. Because more than the lawful number was summoned, 35 being drawn instead of 24.

3. Because there are eight townships and supervisor districts in the county of Chippewa, and it appears from the certificate of the officers drawing said jury that no jurors were summoned or drawn from two of said townships, one of which, "Sugar Island," was the scene of the killing, and such certificate does not state whether the jurors drawn from Sault Ste. Marie were summoned from the village or township of that name.

4. Because the order directing the drawing and summoning of said jury is irregular and insufficient.

The prosecuting attorney stood on said challenge as of a demurrer. The court sustained the demurrer, and overruled said challenge.

In the argument in this Court the first objection is abandoned, but the others are insisted upon.

We think the challenge was properly overruled.

The second and fourth objections may be considered together.

At the opening of the term the circuit judge made the following order:

"No petit jurors having been drawn and summoned for this term of court, and it satisfactorily appearing to the court now here that the attendance of said jurors is necessary, it is therefore hereby ordered and directed that thirty-five qualified jurors be forthwith drawn and summoned in pursuance of the statute in such cases made and provided, to be and appear in said court at the court-house, in the village of Sault Ste. Marie, in said county, without delay, to serve as such petit jurors."

It is claimed, upon the authority of *People v. Hall*, 48 Mich. 482, that this order should have specified the townships from which the jurors were to be drawn, and that the vicinage of the alleged offense should have been included in such order. Under How. Stat. § 7578, the court could order the jury drawn from the county at large, or from specified townships near the county seat. In this case the order was that the jurors be drawn and summoned according to law, which would be from the county at large, as specified and directed by the statute. The objection to the jury drawn in the case of *People v. Hall* was that they were neither a jury of the vicinage, nor a jury of the county at large, nor one desired by the judge himself for the general purposes of the term. "It was therefore not sanctioned by law." See *People v. Hall*, at page 487.

The order in this case was legal, as it directed a jury to be drawn and summoned from the body of the county for the general purposes of the term, and it appears that 35 were none too many for the exigencies of the term, as talesmen had to be summoned to complete the panel in this case.

There is no cause of complaint because 35 men were drawn instead of 24.

In relation to the third objection, if it anywhere appeared that the officers who drew the jury had arbitrarily left out the townships from which jurors were not drawn, it would have been a good cause for quashing the array. But it does not so appear. The burden of proof was on the respondent to show the invalidity of the proceedings by which the jury was obtained. In the absence of a showing to the contrary, it must be presumed that these officers faithfully and correctly performed their duty in the premises.

We held in *People v. Coffman*, 59 Mich. 1, that the omission of the supervisor to return a list of names from one township would not destroy the legality of a jury drawn from the body of the county, and from the lists returned from the other townships according to law. And it will be seen by examining the whole statute, as to the selection of jurymen from the lists re,urned, that it may often happen that within any year the lists from one or more townships may be exhausted by previous drawings.

The lists are made with reference to the population of the supervisor districts, and therefore some of them may send but a very few names to the clerk. How. Stat. § 7556. The names of those drawn at any trial are not to be returned to the packages until the list shall have been exhausted. How. Stat. § 7575. It is also a cause of challenge to a juror if within a year he has been a member of a panel of jurors in the same court. How. Stat. § 7582. It was evidently intended by the Legislature that when a person had been drawn from the list of any township, and served once on a panel, he should not be drawn again within the year. It is also provided that if any name is drawn of one who is dead or insane, or who has permanently removed from the county, such name shall be withdrawn and destroyed, and another name drawn from the same package instead thereof. How.

Stat. § 7567, subd. 4. It is therefore possible that the lists from the townships omitted in this drawing had been exhausted. There being no showing that such lists had not been exhausted under the provisions of the statute, it must be presumed that they had been, and for that reason no jurors were drawn and summoned from those townships. It was for the respondent to clearly show a violation of duty upon the part of the summoning officers. We cannot presume it.

Shortly after the shooting of the deceased by the respondent, and while Coughlin was under arrest and in the county jail, one Oren, a reporter for a newspaper called the "Chippewa County News," interviewed the respondent. He had with him an article from another newspaper, the Sault Ste. Marie Democrat. The article was handed to the respondent, who read the whole of it. When Oren was on the stand as a witness for the prosecution, he gave an account of this interview, and stated that the respondent, after reading the article, said it was correct, with the exception of one or two things.

The whole article appears in the bill of exceptions, with the portions not admitted in evidence erased with red ink. From a perusal of this article it appears that it starts out with a report of the shooting, and some general particulars of the tragedy gleaned from several sources. The article then proceeds to state the circumstances of the case as taken from the evidence of Coughlin before the coroner's inquest, heading it " Coughlin's statement." After giving such statement, the article reads:

"These are the principal statements as made by Mr. Coughlin."

Then the article proceeds to give the testimony of one Dr. Ennis before the coroner's jury,.the verdict of the jury, and the dying declaration of John Perault, a brother of the deceased, who was killed at the same time as his brother Joseph, for whose killing the respondent was on trial. The

article further proceeded to state that the persons killed were the only support of a widowed mother, who had just buried a sister the day before, and might lose her reason. It also described the scene of the homicide.

After the testimony of Oren, the prosecuting attorney, cut out that portion of the article beginning with "Coughlin's statement," and ending with the same, and offered such portion in evidence. Before it was admitted, counsel for the defendant asked the witness if Coughlin read the whole article. He replied that he did. The counsel then objected to the admission of the paper offered, as incompetent and immaterial.

This objection, we think, was broad enough to include the claim made here that it was error to introduce this portion without putting in the whole article.

To digress a little, we think it is proper to remark here that in a case where any documentary evidence is excluded by the trial court, or a portion is admitted, and the claim is that the whole should have been introduced, such evidence not introduced or excluded should be made a part of the bill of exceptions, so that the Court can judge of its admissibility. We speak of this because in this case the circuit judge refused to make that portion of the article not introduced in evidence a part of the bill of exceptions. It was not in the record as printed, and the counsel for respondent only succeeded in getting it returned with the manuscript record as mutilated, and this was accomplished with some difficulty, and against the protest of the prosecuting attorney, who insisted that it should not come here at all.

If the whole article were not here, so that we could get its tenor and effect, it would be our duty to reverse the conviction of the respondent, because we would be entirely unable to say that the admission of a portion of the article, the whole of which was read by Coughlin, did not prejudice his case before the jury. But as it is, we are satisfied that the

prosecuting attorney but performed his duty when he put in evidence only that part of the article which related solely to the respondent's own statements. The admission of the balance could have had no other effect, in our judgment, than to injure instead of benefiting the respondent. He therefore cannot complain, and ought to be well satisfied with the action of the prosecution in this respect.

The respondent's counsel offered in evidence the proceedings before the coroner's jury, including the evidence and the verdict of the jury. It was properly excluded. The object, as admitted by defendant's counsel, was to show that Coughlin testified before such jury substantially as upon the trial, and that such jury found the shooting was done in self-defense. It was not offered for the purpose of contradicting any witness sworn upon the trial, or for impeachment, but simply to corroborate the respondent's testimony upon the trial by his statement before the coroner. This could not be done.

The remaining errors are assigned against the charge of the court to the jury. Without going into detail, it is sufficient to say that the case of the defendant was fairly put to the jury in the instructions of the circuit judge. When the shooting took place, the defendant was in a root-house or out-door cellar, or in the door of it. The man killed was claimed to have been attempting to enter against the protest and warning of Coughlin. It was contended on the trial that the shooting was done in self-defense.

The judge in his charge made this root-house the same as his dwelling-house, and instructed the jury that he was not obliged to flee therefrom, but that he was authorized to repel force by force, and protect himself and *his house* from intrusion, and if in the reasonable exercise of his rights of self-defense, as appeared to him at the time, he killed his assailant, the killing would be justifiable homicide; that the burden of

proof was upon the prosecution to satisfy the jury, beyond a reasonable doubt, that the killing was not in self-defense, and that no reasonable belief existed in defendant's mind at the time that he was in great bodily danger, as the facts and circumstances then appeared to him.

We do not perceive how the case of the respondent could have been better stated within the law.

It is complained that the court erred in further stating to the jury, in this connection, that Coughlin would have no right to at once shoot deceased simply because he would not go away when told, or because he insisted on entering when forbidden, and further as follows:

"But in no case is human life to be lightly disregarded, and if you should find, beyond a reasonable doubt, that defendant shot and killed Perault through mere cowardice, or from intentionally pointing his gun at him, and carelessly shooting to frighten him away, and under circumstances which, as they appeared to him at the time of the shooting, were not sufficient to induce in him a reasonable belief that he was in danger of bodily harm, the law will not justify the killing on the ground of self-defense."

We think the law was properly stated as to the right to shoot, and, as the circuit judge expressly charged the jury that they could not convict the respondent of any higher crime than manslaughter, that portion of the instructions as to carelessly shooting to frighten him away was also correct.

The court was asked to instruct the jury that the evidence offered on behalf of the respondent tended to show that the act of killing was done while the defendant was under the belief that he was in danger of death or serious bodily harm. The court refused to so charge. Authorities are cited to the effect that it is within the province of the court to instruct the jury as to the tendency of evidence. We find, however, no authority holding it error for the court to

refuse to instruct the jury that certain evidence has a certain tendency.[1]

The judgment of the court below must be affirmed.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.

————◆————

<div align="right">

| 67 | 475 |
| 107 | 586 |
| 67 | 475 |
| 111 | 333 |
| 67 | 475 |
| d156 | 299 |

---

[1] See *Davis v. Gerber,* 69 Mich —(37 N. W. Rep. 284, 285), holding that it is error for the court to instruct the jury what the testimony *tends* to prove, *unqualifiedly,* without submitting to them in the same connection the question of its *credibility.*

