## THE PEOPLE v. PHILLIP LENNON.

*Criminal law—Self-defense—Evidence.*

1. In cases of self-defense, the question to be determined is, did the accused, under all of the circumstances of the assault, as it appeared to him, honestly believe that his life was in danger, or that he was in danger of great bodily harm, and that it was necessary to do what he did in order to save himself from such apparent threatened danger, and, if so, the inquiry is ended.

---

It can and ought to make no difference whether he was a bold, strong man, used to affrays and personal encounters, or a weak, timid man, unacquainted with broils or assaults, as to the *sufficiency* of his reason for his action, if the jury believe that he acted honestly in fear of his life or of great bodily harm.[1]

2. In cases of self-defense, the physical and mental make-up of the respondent, and his experience in danger, are to be considered as bearing upon the *honesty* of his alleged belief, upon which he bases his right to act; and in such consideration the fact that the accused is weak, timid, and cowardly by nature is to be weighed in his favor.

Error to Mackinac. (Steere, J.) Argued June 27, 1888. Decided July 11, 1888.

Respondent was convicted of an assault with intent to do great bodily harm less than the crime of murder, and sentenced to State prison for two years. Judgment reversed and prisoner discharged. The facts are stated in the opinion.

*Brown & Packard,* for respondent.

*Moses Taggart,* Attorney General, and *Henry Hoffman,* Prosecuting Attorney, for the people.

MORSE, J. Lennon was convicted in the circuit court for the county of Mackinac of an assault upon one Herbert Ryerse, with intent to do said Ryerse great bodily harm less than the crime of murder. There was another count in the information filed against him, charging him with an assault with intent to commit the crime of murder. By the verdict he was acquitted upon this count. The errors assigned relate to the charge of the court.

The court charged the jury upon the subject of self-defense, among other things, as follows:

---

[1] See *People v. Coughlin,* 65 Mich. 704, 67 Id. 467 (head-note 8).

"And if you believe, from the evidence in this case, that at the time of the alleged assault the defendant, Lennon was first attacked by the complaining witness, and that the circumstances, as they then appeared to him, were such as in reason would and did justify or induce in his mind a probability of a belief that he was to receive from Ryerse some great bodily harm, and in doing what he did he was acting under the instincts of self-preservation, he would not be guilty of the offenses charged in this case.

"But in that connection you ought to remember that human life is not to be lightly regarded. A man cannot avail himself of this fact in order to escape the penalty of such acts as were provoked by his own unlawful act. And if a man kills or attempts to kill him, or unlawfully attacks or injures another, through mere cowardice, or under circumstances not warranted to induce in his mind a reasonable fear of injury, and which would be considered to arise from a want of courage, or an unwarrantable cowardice under the circumstances, situated as the party attacked was, and as the circumstances then presented themselves to him, the law of self-defense would not apply, and would not justify such an act."

I do not think it proper that a jury should be authorized to determine the standard of courage in a case of self-defense, or whether the party attacked, in what he did in his defense, acted cowardly, and therefore without warrant. There is no question of courage or cowardice in the case. I am aware that the rule laid down by the trial court has been sustained in some cases, collected and reported in Horrigan & Thompson's Cases of Self-defense; but the doctrine, or the reason given for it, is not in accord with the principles of self-defense, as now almost universally held and enunciated by the courts of this country.

The question to be determined is, did the accused, under all the circumstances of the assault, as it appeared to him, honestly believe that he was in danger of his life, or great bodily harm, and that it was necessary to do what he did in order to save himself from such appar-

ent threatened danger? If so, the inquiry is ended. It can and ought to make no difference whether he was a bold, strong man, used to affrays and personal encounters, or a weak, timid man, unacquainted with broils or assaults, as to the sufficiency of his reason for his action, if the jury believe that he acted honestly in fear of his life or great bodily harm. The fact of his physical and mental make-up, and his experience in danger, are to be considered, it is true, as bearing upon the honesty of his alleged belief, upon which he bases his right to act; but in such consideration the fact that the accused is weak, timid, and cowardly by nature is to be weighed in his favor, and not against him. To hold otherwise would be to set at naught, and to rule at variance with, the well-known laws of human nature, and to place the weak and timid at the mercy of the strong. It is bad enough to be constitutionally a coward, without having the law also declare that the coward has no right to act in self-defense until he reaches the point where a man of average courage would have defended himself in the same manner, and to have the quantum of courage necessary in such cases determined by a jury sitting in safety and cool blood, listening to what must always be a tame recital of the facts, compared to their appearance at the time they occurred.

Upon the argument I was inclined to the belief that the error committed was not a prejudicial one, as from a hasty perusal of the record I had formed the impression that the respondent, in his own statement, did not claim to act in self-defense, but that he fired the pistol in the air purposely with the intention of scaring Ryerse away, and not with any idea of hitting him. But a careful examination of the record discloses that the claim of self-defense was made and relied upon by the defendant and his counsel.

It is also claimed that the court erred in instructing
the jury that the respondent could be convicted of an
assault with intent to do great bodily harm in case the jury
found that the assault was made unlawfully, without
malice aforethought, but with an intention to take life,
suddenly formed, under such circumstances of provocation
that, if death had ensued, the killing would have been
manslaughter. As we view the testimony appearing in the
record, there is no necessity of examining this claim of
error. We find no evidence in the case warranting a con-
viction of the respondent of any greater offense than
assault and battery, if he was guilty of any offense.
Ryerse was not hit by a bullet, and there is no testimony
showing that respondent meant to shoot him. Ryerse was
not hurt to speak of, and was more to blame than defend-
ant.

On the evening of July 4, it is admitted and undisputed
that he stopped in front of respondent's residence in com-
pany with a squaw prostitute, and then deliberately and
grossly insulted Lennon in the presence of his family by
remarks in a loud tone to the prostitute, using language
unfit to be here repeated. Most men would have felt jus-
tified in chastising such an obscene brute at the time,
and the infraction of the law in so doing would have been
satisfied by a light penalty.

There was testimony tending to show that there had
been trouble for some time between the Ryerse family
and Lennon. Lennon claimed that for a long time he
had been the subject of many indignities and outrages on
the part of Ryerse and his father, and others who were
in league with them. This last insult was too much,
and Lennon felt that he could no longer submit to such
treatment. He therefore, on the morning of July 5,
stopped Ryerse as he was passing his house, and expos-
tulated with him; asked him, " How long are you going

to torment me in this way?" Ryerse gave him an insulting answer, which led to blows. Ryerse claims Lennon struck first, and the respondent swears that Ryerse assaulted him, backing him towards his gate, and "punching" him in the face. Lennon testifies that he was sickly, and scared; that he considered his life in danger, as he was so weak that he felt that one good blow, "the least thing in the world, would lay me out; it would knock me dead." He claims he fired his pistol the first time to scare Ryerse, but, as Ryerse kept on afterwards following him up and striking him, he struck Ryerse on the ear with the revolver, and it went off the second time accidentally. Whether Ryerse first assaulted Lennon or Lennon first struck Ryerse on this morning of July 5 is immaterial. At the best, Lennon was only guilty of assault and battery, and he has now been sufficiently punished for that offense.

The judgment and sentence against him is vacated and set aside, and he will be forthwith discharged from any further custody or restraint in this case.

The other Justices concurred.