PEOPLE v. GIACALONE.

1. JURY—RIGHT TO TRIAL BY JURY—ONE ACCUSED OF MURDER ENTITLED TO JURY TRIAL ON PLEA OF SELF-DEFENSE.

In a prosecution of a wife for the murder of her husband, where the sole defense was self-defense, an instruction to the jury that the killing was neither excusable nor justifiable homicide, but was felonious, and leaving to the jury the sole duty of determining the degree of guilt, was erroneous in that it was in effect a directed verdict of guilty, and deprived defendant of her constitutional right of trial by jury (section 13, Art. 2, Constitution).

2. HOMICIDE—MURDER INVOLVES INTENT—RIGHT TO JURY TRIAL.

Since murder is a major charge, involving intent, where the plea of not guilty has been entered, finding a verdict is for the jury and not the court.

[1]Criminal Law, 16 C. J. § 2301; [2]Homicide, 30 C. J. § 572.

3. SAME — KILLING OCCURRING SEVERAL HOURS AFTER ASSAULT ABANDONED NOT JUSTIFIED ON GROUND OF SELF-DEFENSE.

If a wife killed her husband two or three hours after he had abandoned his assault upon her, the killing could not be justified on the ground of self-defense.

4. SAME—SELF-DEFENSE DEPENDS ON NECESSITY THEREFOR, REAL OR APPARENT.

The right of self-defense commences when necessity, real or apparent, begins, and ends when it ceases.

5. SAME—CIRCUMSTANCES VIEWED FROM STANDPOINT OF ACCUSED.

Circumstances must be viewed from the standpoint of accused alone, and if they are sufficient to induce in him an honest and reasonable belief that he is in danger of great bodily harm or loss of life, he is justified or excused in killing.

6. SAME—EVIDENCE OF CONDUCT OF DECEASED ADMISSIBLE.

Evidence of the conduct of the deceased is admissible to show the reasonableness of the defendant's apprehension of danger.

7. SAME—THAT DECEASED BEAT ACCUSED MAY BE SHOWN.

In a prosecution of a wife for the murder of her husband, in which she set up self-defense, evidence that the deceased had on other occasions beat her is admissible.

8. SAME—REPUTATION OF DECEASED FOR FEROCITY KNOWN TO ACCUSED MAY BE SHOWN.

The reputation of the deceased for ferocity, brutality, and vindictiveness, so far as defendant had been informed thereof before the affray, was competent upon the question of whether such knowledge, together with knowledge of specific acts along the same lines, afforded defendant reasonable grounds for entertaining the belief that he was in imminent danger of death or great bodily harm.

9. SAME—PHYSICAL SUPERIORITY AND THREATS OF DECEASED MAY BE SHOWN.

In a prosecution of a wife for the murder of her husband, evidence that he was physically superior, that he had made threats against her, and tending to show surrounding circumstances as they appeared to her at the time and to show mental attitude, was admissible.

[3]Homicide, 30 C. J. § 228; [4]Id., 30 C. J. § 208; [5]Id., 30 C. J. § 234; 3 L. R. A. (N. S.) 535; 13 R. C. L. 816; 3 R. C. L. Supp. 87; 4 R. C. L. Supp. 834; [6]Id., 30 C. J. § 480; [7]Id., 30 C. J. § 473; [8]Id., 30 C. J. § 465; [9]Id., 30 C. J. §§ 474, 480, 481.

242—Mich.—2.

10. SAME—QUESTION OF SELF-DEFENSE FOR JURY.

> Where the killing followed a brutal assault upon her, accompanied by threats to kill her before morning, whether he had abandoned his declared purpose to kill her, and whether the circumstances, at the time of the shooting, were sufficient to induce in her an honest and reasonable belief that she was in danger of great bodily harm or loss of life, *held*, under the evidence, a question of fact for the jury, although the killing occurred several hours after the assault.

Exceptions before judgment from Genesee; Parker (James S.), J. Submitted January 12, 1928. (Docket No. 130.) Decided February 14, 1928.

Rose Giacalone was convicted of murder in the second degree. Reversed.

*Bishop, Blackney & Church*, for appellant.

*William W. Potter*, Attorney General, and *William R. Roberts*, Prosecuting Attorney, for the people.

CLARK, J. Defendant, convicted of murder on April 28, 1927, reviews on exceptions before sentence, complaining that the court erred in declining to entertain her defense of justifiable homicide, and in refusing to admit evidence offered to support and to establish it, and in directing a verdict of guilty. The court instructed the jury that "this killing is neither excusable nor justifiable homicide but   *   *   * is felonious homicide." The charge gave to the jury the sole duty of determining degree of guilt. It does not contain the words "not guilty." It leaves to the jury no choice of verdict as between guilty and not guilty. In effect, the jury was instructed to return a verdict of guilty and to determine the degree of guilt. That defendant is guilty is the verdict of the judge, not of the jury, and cannot be sustained. Murder is a major charge involving intent. The plea of not guilty having been

---

[10] Homicide. 30 C. J. § 580.

entered and being undetermined, finding a verdict was for the jury.    The constitutional right of trial by jury remains (section 13, Art. 2, State Constitution), and defendant was entitled to a verdict of the jury impaneled to try and determine the cause.    See *People v. Heikkala,* 226 Mich. 332, where the matter is considered at length.

Defendant shot and killed her husband in their home in Flint on February 13, 1927.    She defended on the sole ground that the shooting was in self-defense. Early in the trial the court indicated that the defense would not be entertained, for the reason that there was "no overt act on the part of the deceased toward her at that particular time," and that deceased was not at that moment engaged in an assault upon her.    To support the defense, evidence was offered of threats made by deceased to defendant shortly before the shooting, of assaults made by him upon her, of her physical injuries, and of his brutal and violent treatment of her for some time prior to the event in question, which offer was refused in part at least.

The shooting occurred toward midnight.    Near 7 o'clock of that evening deceased became violently enraged, without just cause, and choked defendant, leaving bruises on her throat.    He struck her and otherwise bruised and injured her.    He threatened to kill her.    She was crying.    He had a pistol and two shotguns with shells for them in the room where they slept.    He cleaned and loaded the pistol.    He held it close to her, saying "I got to kill you."    He said he would kill her before morning.    He hung the loaded pistol in a holder on a nail near his bed.    A shotgun and shells were also near.    He went to bed near 9 o'clock.    Their children were in bed in the same room.    After defendant had lain in bed about two or three hours, not sleeping, as she testified, there being no light in the room, and believing deceased to be asleep, she arose, went around his bed, took the pistol from the

holder and started to leave the room to go to the home of a neighbor.     She testified:

"I was going to neighbor because he told me he want to kill me.    *    *    *

"*Q.* Did you think he was going to kill you as he said he was?

"*A.* Sure.    *    *    *

"*Q.* That is what made you shoot, because you were afraid he would kill you if you did not?

"*A.* Yes.    *    *    *

"*Q.* This was right after he had told you, that is, the same night he told you he would kill you before morning?

"*A.* Sure he would do, because he started in the morning pretty near kill me every morning before he go to work."

As she was leaving deceased made a noise and the bed squeaked and she thought him awakened and getting up.     She testified:

"I cannot run because I got my house locked, fire, he come on me, kill me, because he got another gun in bedroom, you see he got this gun, see?     He kill me."

She then, though not accustomed to using a pistol, shot and killed him.     There is evidence by the autopsy tending to support, it seems, her belief that deceased was getting up when she shot.

She went to a nearby home of a relative and told what she had done, then started for the police station, and, meeting a policeman, related the matter to him. There is nothing in the record tending to discredit seriously her testimony.     Although deceased had long been brutal and violent toward her, the record does not show that she was revengeful.     Nor does it show before the shooting any act of violence or misconduct on her part.     Tears and sorrow seem to have been her portion.     The record suggests no reasonable explanation of this shooting except that advanced by the defendant herself.

If defendant killed deceased two or three hours after

he had abandoned his assault upon her, there would not be ground for the defense here sought to be made.

"The right of self-defense commences when necessity, real or apparent, begins, and ends when it ceases." Wharton on Homicide (3d Ed.), 378-382.

The rule obtaining in this State is:

"That the circumstances must be viewed from the standpoint of accused alone, and that if they are sufficient to induce in him an honest and reasonable belief that he is in danger of great bodily harm or loss of life, he is justified or excused in killing." 30 C. J. p. 63.

It is said in 1 Michie on Homicide, p. 1029:

"Evidence of the conduct of the deceased is admissible to show the reasonableness of the defendant's apprehension of danger."

and on p. 1027:

"Upon the issue of self-defense, any evidence, which, according to the common experience of mankind, tends to show that the defendant had reasonable cause to apprehend great bodily harm from the deceased is admissible."

and on p. 1014:

"In a prosecution of a wife for the murder of her husband, in which she set up self-defense, evidence that the deceased had on other occasions beat her is admissible."

"The reputation of the deceased for ferocity, brutality and vindictiveness, so far as defendant had been informed thereof before the affray, was competent upon the question of whether such knowledge, together with knowledge of specific acts along the same lines, afforded defendant reasonable grounds for entertaining the belief that he was in imminent danger of death or great bodily harm." *People* v. *Walters,* 223 Mich. 676.

See *People* v. *Farrell,* 137 Mich. 127.

Evidence that deceased was physically superior (1 Michie on Homicide, 1028), and had made threats to her (2 Wharton's Criminal Evidence [10th Ed.], p.

1713.), and evidence tending to show surrounding circumstances as they appeared to defendant at the time and to show mental attitude (Wharton on Homicide [3d Ed.], p. 383), was admissible.

After beating defendant deceased said he would kill her before morning.    It was not yet morning.    He had hung the loaded pistol within reach.    He had other guns and ammunition near and in the room.    Defendant had suffered his violence and brutality.    She knew him.    Her fear would not be lessened by her apprehension of being discovered in her attempt to leave the home.    Viewed from her standpoint of the time, or from any standpoint, it cannot be said as a matter of law that he had abandoned his declared purpose to kill her, nor that the circumstances were not sufficient to induce in defendant an honest and reasonable belief that she was in danger of great bodily harm or loss of life.    The case of *People* v. *Mondich*, 234 Mich. 590, is somewhat similar in facts, and it was held that the claim of self-defense was an issue of fact for the jury.    See, also, *State* v. *Peterson*, 24 Mont. 81 (60 Pac. 809) ; *Wallace* v. *State*, 44 Tex. Crim. Rep. 300 (70 S. W. 756) ; *Roberts* v. *State*, 68 Ala. 156; 13 R. C. L. p. 820; *People* v. *Harris*, 95 Mich. 87; *Patten* v. *People*, 18 Mich. 314 (100 Am. Dec. 173) ; *Pond* v. *People*, 8 Mich. 150; *People* v. *Tillman*, 132 Mich. 23.

It follows that defendant ought to have been permitted to adduce evidence tending to show justifiable homicide, and that she was entitled to have her defense submitted to the jury under proper instructions.

Conviction set aside, and cause remanded.    New trial granted.

NORTH, FELLOWS, WIEST, McDONALD, and SHARPE, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.