PEOPLE v ROBINSON

1. CRIMINAL LAW—CONSTITUTIONAL LAW—EVIDENCE—STATEMENTS
    BY DEFENDANT—VOLUNTARINESS OF STATEMENTS—JURY.

    The issue of the voluntariness of statements made by a criminal
    defendant to a police officer, once decided by the trial court,
    should not be resubmitted to the jury; the jury's determination
    regarding the statement of the accused is limited to assessing
    its weight and credibility.

2. CRIMINAL LAW—APPEAL AND ERROR—PRESERVING ISSUE—EVI-
    DENCE—STATEMENTS BY DEFENDANT—VOLUNTARINESS OF STATE-
    MENTS—WALKER HEARING.

    The issue of the voluntariness of statements made by a defendant
    to police officers was properly preserved for appeal where the
    defendant objected to the admission of the statements into
    evidence at the trial and where a *Walker* hearing was held as
    to the voluntariness of the statements.

3. CRIMINAL LAW—EVIDENCE—CONSTITUTIONAL LAW—MIRANDA
    WARNINGS—FOCUS OF INVESTIGATION.

    A person upon whom a criminal investigation has focused must
    be given *Miranda* warnings before any statements made in
    response to police interrogation will be admissible into evi-
    dence.

4. CRIMINAL LAW—EVIDENCE—CONSTITUTIONAL LAW—STATEMENTS
    BY DEFENDANT—VOLUNTARINESS OF STATEMENTS—WALKER
    HEARING—MIRANDA WARNINGS.

    A defendant's original responses to a police officer were inadmis-
    sible as evidence against the defendant where the prosecution
    stipulated at a *Walker* hearing that the police investigation

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 29 Am Jur 2d, Evidence §§ 529, 543–545, 584, 587.
[3, 4] 29 Am Jur 2d, Evidence § 555 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error § 844.
[6, 7] 40 Am Jur 2d, Homicide § 151 *et seq.*
[8, 9] 75 Am Jur 2d, Trial §§ 699, 853.
[10] 81 Am Jur 2d, Witnesses § 569 *et seq.*
[11] 81 Am Jur 2d, Witnesses § 577.

had focused on the defendant at the time the police officer questioned the defendant, who had not been given *Miranda* warnings.

5. APPEAL AND ERROR—CRIMINAL LAW—VOLUNTARINESS OF STATE- MENTS—COURT OF APPEALS—STANDARD OF REVIEW—CLEARLY ERRONEOUS STANDARD.

The Court of Appeals, in examining a lower court's finding that a statement given to a police officer was given voluntarily, should examine the entire record and make an independent determi- nation of the issue; the ruling of the trial judge will not be reversed unless the Court of Appeals is convinced that a mistake was committed and that the decision of the trial judge is clearly erroneous.

6. CRIMINAL LAW—DEFENSES—SELF-DEFENSE—JURY—DEFENDANT'S BELIEF.

The ultimate question to be answered by a jury in a criminal case where the defendant raises the issue of self-defense is whether this defendant truly believed himself to be in danger, not whether a reasonable man under the same or similar circum- stances would have believed himself to be in danger.

7. CRIMINAL LAW—DEFENSES—SELF-DEFENSE—TRIER OF FACT—DE- FENDANT'S BELIEF—CIRCUMSTANCES.

The trier of fact in determining whether a defendant claiming self-defense believed he was in danger should examine the circumstances as they appeared to the accused, not as they actually existed; among the circumstances to be considered are (1) the relative size and strength of the parties, (2) the mental condition of the accused as effected by prior altercations with the victim, (3) threats made by the victim to the accused, (4) the defendant's personal knowledge of the victim's violent character and the defendant's awareness of the victim's general reputation for violence, and (5) the defendant's prior experience in dealing with violent situations and the defendant's own particular level of courage.

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—REQUESTED INSTRUCTION —DEFENDANT'S THEORY OF THE CASE—EVIDENCE.

A defendant is entitled to have the jury instructed on his theory of the case if such an instruction is requested and supported by competent evidence.

9. JUDGES—INSTRUCTIONS TO JURY—ISSUE IN CASE—THEORIES OF PARTIES—REQUEST FOR INSTRUCTIONS—COURT RULES.

It is a court's duty to present the material substance of the issues

in a case and the theories of the parties to the jury; for this purpose, each party shall submit to the court at the close of the evidence a statement setting forth as issues only those disputed propositions of fact which are supported by the evidence or admitted, and the party's theory of the case as to each issue (GCR 1963, 516.7).

10. CRIMINAL LAW—CONSTITUTIONAL LAW—EVIDENCE—PRIOR CONVICTIONS—IMPEACHMENT—RIGHT TO COUNSEL.

A defendant, who was claiming that a plea-based prior conviction which the prosecution introduced as impeachment evidence was unconstitutional because it was in violation of the defendant's right to counsel, failed to present sufficient evidence at a hearing on the issue to require the prosecution to establish the constitutional validity of the prior conviction where the defendant testified at the hearing that he did not have the assistance of counsel at the time of the plea and that he was unable to remember whether he had been advised of the availability of appointed counsel and the court was not persuaded that he had been improperly convicted.

11. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—IMPEACHMENT—REMOTENESS.

The prosecution should not be permitted to use a defendant's prior conviction for impeachment purposes where the remoteness of the conviction diminishes the value of such evidence in demonstrating the credibility of the accused.

Appeal from Bay, John X. Theiler, J. Submitted June 22, 1977, at Lansing. (Docket No. 29608.) Decided October 11, 1977. Leave to appeal applied for.

Eddie Robinson was convicted of assault with intent to do great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *Brian M. Kennedy,* Assistant Prosecuting Attorney, for the people.

*Isackson & Neering, P. C.* (by *Frank M. Quinn),* for defendant on appeal.

Before: D. F. Walsh, P. J., and Quinn and H. D.
Stair,* JJ.

Per Curiam. On October 31, 1975, defendant
was convicted of assault with intent to do great
bodily harm less than murder[1] following a jury
trial in Bay County Circuit Court. He was sen-
tenced on November 24, 1975, to a prison term of
3 to 10 years and now appeals.

At 9 p.m. on September 2, 1975, defendant,
James Baker, Florence Turner and others began
drinking alcoholic beverages at defendant's house
on Grant Street in Bay City, Michigan. Defendant
and Baker had been friends for 14 years. Defend-
ant was the "common-law" husband of Florence
Turner, who was Baker's mother. All three indi-
viduals lived at the residence.

Around 11:30 p.m., Baker left the house and
purchased a pint which, upon his return, he and
the defendant consumed in the kitchen while the
rest of those present slept. Two additional pints
were purchased during the night.

After defendant and Baker returned from pur-
chasing the third pint at approximately 7 a.m.,
John McLemore, a mutual friend, arrived for a
visit. Shortly afterward, defendant and Baker be-
gan arguing over Baker's relationship with his
mother. As the disagreement escalated, Baker
arose twice from his chair at the kitchen table and
gestured or moved toward defendant in a threaten-
ing fashion. The second time Baker stated, "I'll
slaughter you". Defendant drew a .22-caliber pistol
and fired a single shot which hit Baker in the left
thigh.

Immediately after the shooting defendant had

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA 750.84; MSA 28.279.

an overnight guest, Quincy Flinnon, drive him downtown. Defendant was arrested for the assault at approximately 1:30 p.m.

On appeal, defendant argues that the lower court erred in permitting the prosecution to (1) admit a statement obtained in violation of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), and (2) introduce a confession which defendant contends was involuntarily given, and challenges (3) the lower court's instruction on self-defense, (4) the refusal of the court to give a requested instruction on the defense theory of the case, and (5) the court's decision to allow the use of an allegedly invalid prior conviction for impeachment purposes.

While this court agrees that error was committed by the trial court in admitting a statement obtained from defendant in the absence of the required warnings and in refusing the proposed instruction on the defense theory, we do not decide whether such errors, standing alone, require reversal. Upon an examination of the entire record, however, this Court is convinced that defendant was not accorded a fair trial and his conviction must be reversed. *People v Strodder,* 394 Mich 193; 229 NW2d 318 (1975) (opinion of T. G. Kavanagh, C. J.), *People v Skowronski,* 61 Mich App 71; 232 NW2d 306 (1975). Because the questions presented on appeal are likely to arise again on retrial, they will be addressed by this Court.

## Issues I and II

Defendant was arraigned on the charges arising from the shooting incident on October 14, 1975, and his trial commenced October 23. Immediately before trial began, defendant filed a motion *in limine* requesting that the prosecution be ordered

to refrain from questioning witnesses as to statements or admissions made by the defendant. On the first day of trial, the motion was argued orally before the court. Defense counsel argued that the prosecutor should be required to lay a foundation as to the admissibility of such statements, including evidence that they were constitutionally obtained, prior to their introduction. The court ruled that defendant's motion was "a backhand motion for suppression of evidence" not properly before the court. The court further held that a mere request for suppression of the statements was insufficient to require a preliminary hearing on the matter.

During trial, Bay City Police Officer Eugene Van Allen, who had investigated the shooting immediately after its occurrence, testified that he observed the defendant at approximately 1:30 p.m. on Madison Street. The officer approached the defendant with his gun drawn, ordered the defendant to keep his hands in sight and checked the defendant for a weapon. Upon finding defendant unarmed, Van Allen put away his gun and questioned the defendant about the shooting. Defense counsel objected to any further testimony and was permitted to voir dire the witness.

In the officer's opinion defendant was not intoxicated when the officer questioned him. While Van Allen testified that he had not arrested the defendant when their conversation occurred, he admitted having taken "control" of the defendant.

Defense counsel objected to the admission of defendant's statement to Van Allen on the basis that defendant had not been advised of his constitutional rights. The prosecutor responded that the questioning was investigatory rather than custodial. The trial court ruled that since defendant

was not under arrest, but only in custody, his statement was admissible.

Officer Van Allen thereafter described his conversation with defendant:

"I said, 'Did you shoot a guy?', and his response was —he asked me, 'Is he dead?' I said, 'No, he's in the hospital.' At that time, Mr. Robinson stated to me, he says, 'Then what difference does it make?', and that was the last I talked to him."

After the discussion, Van Allen arrested the defendant and transported him to the police station where the officer advised defendant of his rights.

Following Van Allen's testimony Bay County Police Officer Ronald W. Remington took the stand and testified that he questioned Robinson while the defendant was being booked. Defense counsel moved that the officer be precluded from testifying to defendant's statement before showing that defendant had been advised of his rights and that defendant gave the statement voluntarily. The trial court ruled that the former should have been raised in a motion to suppress and that the latter was a question for the jury.[2]

Officer Remington testified that defendant admitted shooting Baker and said that he had meant to shoot him in the leg. Defendant further stated, however, that he now wished that he had killed Baker.

Defense counsel renewed his objections to the admission of the statements in a motion for a new

---

[2] The issue of voluntariness, once decided by the trial court, is not resubmitted to the jury. The jury's determination regarding the statement of the accused is limited to assessing its weight and credibility. *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). While the court's comment in the instant case indicates a contrary position, the court, in its instructions, properly limited the function of the jury.

trial. During oral argument on the motion, the trial court granted defendant a *Walker*[3] hearing. At the conclusion of the hearing, the court ruled that the absence of *Miranda* warnings at the time of defendant's statement to Officer Van Allen rendered the statement inadmissible since defendant was then in custody. Because the fact that defendant shot Baker was never contested, however, the court ruled the error harmless. With regard to the second statement, the court was of the opinion that defendant had understood his rights and had voluntarily waived them.

Since defendant objected to the admission of his statements to Officers Van Allen and Remington at trial, and a *Walker* hearing has been held as to the voluntariness of the second statement, the issues raised by defendant have been properly preserved for appellate review. *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975), *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968), *cert den,* 393 US 960; 89 S Ct 397; 21 L Ed 2d 374 (1968). See, *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).[4]

In Michigan a person upon whom a criminal investigation has focused must be given *Miranda* warnings before any statements made in response to police interrogation will be admissible into evidence. *People v Reed,* 393 Mich 342; 224 NW2d

___

[3] *Id.*

[4] Defendant also argued at the hearing on his motion for a new trial, and presently contends on appeal, that, granting the constitutional invalidity of his initial statement, his subsequent confession is inadmissible as having been obtained by exploitation of the primary illegality. Generally, *People v Radowick,* 63 Mich App 734; 235 NW2d 28 (1975).

Defendant's argument presents a question of fact. *People v Radowick, supra.* Because the trial court in the instant case did not expressly rule on defendant's argument, we are unable to review the issue properly. Upon remand, the lower court is directed to make a determination regarding the issue.

867 (1975), *cert den* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), *People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976).[5] In the present case, the prosecution stipulated at the *Walker* hearing that the police investigation had focused on defendant at the time Officer Van Allen questioned Robinson. Defendant's original responses to Officer Van Allen, therefore, were inadmissible.

In reviewing the lower court's finding that the statement given to Officer Remington was given voluntarily, this Court must examine the entire record and make an independent determination of the issue. The ruling of the trial judge will not be reversed unless this Court is convinced that a mistake was committed and the decision of the trial judge is clearly erroneous. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), *People v Thomas Jones,* 73 Mich App 107; 251 NW2d 264 (1976), *People v Combs,* 69 Mich App 711; 245 NW2d 338 (1976).

At the *Walker* hearing, Officer Remington testified that he assisted Officer Van Allen in bringing defendant into the station following his arrest. Van Allen advised defendant of his rights in Remington's presence. Defendant indicated that he understood his rights, that he did not wish to consult with an attorney and that he was willing to discuss the shooting. Between 10 and 20 min-

---

[5] In *Beckwith v United States,* 425 US 341; 96 S Ct 1612; 48 L Ed 2d 1 (1976), the Supreme Court rejected a claim that statements made by one during the course of an interview with agents of the IRS, investigating the possibility of criminal tax fraud, were inadmissible in the absence of *Miranda* warnings once the investigation had focused on the accused. The Court held that the warnings were only required when a defendant was questioned while in custody or otherwise deprived of his liberty in any significant way.

Given Officer Van Allen's testimony at trial, this Court finds no reason to reassess the position of the Michigan courts in light of the *Beckwith* decision.

utes later, when defendant was being finger-printed, Remington asked the defendant whether he had shot Baker and the conversation, earlier described at trial, occurred. Remington testified that at the time of the statement defendant was calm. No threats or coercion had been made or exerted to secure the statement. While the officer detected alcohol on defendant's breath, he was of the opinion that defendant was not intoxicated. The defendant did not stumble or stagger, his speech was normal rather than slurred, his answers were responsive and he was neither confused nor disoriented.

Roger Bard, a clinical psychologist, was called by the defense to testify. At defense counsel's request Bard had sought to evaluate defendant's intelligence level and communicative skills by administering the Minnesota Percepto-Diagnostic Test[6] and the Wechsler Adult Intelligence Scale[7] to defendant at the Bay County jail.

The witness evaluated defendant's intelligence as bordering on the dull normal range. He further testified that Robinson's performance on sub-tests relating to communicative abilities was lower than his general intelligence levels would indicate: as to verbal communication, defendant functioned in the borderline between the dull normal and mentally defective ranges. The witness indicated that, on the basis of such tests and a diagnostic inter-

[6] The witness described the Minnesota Percepto-Diagnostic Test as "a brief screening instrument for assisting perceptual disturbances caused by organicity or personality disturbance".

[7] According to the witness, the "Wechsler Adult Scale is an individual administered intelligence test composed of eleven subtests that are divided into two broad areas, [it] characterizes a verbal scale and a performance scale. It is aimed at testing * * * for different abilities, from such things as short-term memory to verbal comprehension, of abstract concepts, the ability to sort out similarities and differences among common place objects and to classify these differences."

view, he was of the opinion that the ability of the defendant to comprehend his rights was doubtful.

On cross-examination, Bard indicated that there had been a fair amount of confusion at the jail when the tests were administered which would significantly affect the ability of a subject to concentrate. In addition, defendant's attitude was erratic, he was lackadaisical, did not care whether he performed well and simply wanted to complete the tests. At one point, defendant indicated that he did not feel well. Because of these factors, defendant's test score could vary as much as 10 points which would conceivably place defendant in the high end of the dull normal range. The chance that defendant did not understand his rights was termed a "possibility".

Defendant took the stand and testified that he was 48 years old, had attended school until the fourth or fifth grade, could not read and could not write anything but his name. According to defendant, he drank about a fifth of vodka on the morning of the shooting between the time he left the house and his arrest, having a drink as late as 15 minutes before his arrest. He also reiterated his trial testimony that he consumed alcohol throughout the night preceding the shooting. He was unable to remember being questioned by either Van Allen or Remington nor could he recall being advised of his constitutional rights. He further testified that he was unable to define a "right".

On cross-examination, defendant admitted that he had been arrested before and had heard the warnings read to a criminal defendant previously. He explained the right to remain silent, the right to have an attorney present and the right to have a lawyer appointed. He testified that no physical force had been used against him and that everyone at the station had been "pretty nice".

The evidence presented at the *Walker* hearing presents a close question as to whether defendant knowingly waived his constitutional rights. This Court, however, is unable to declare the conclusion of the trial court clearly erroneous.

Defendant was able to explain various rights when questioned on cross-examination. In addition, his testimony at the *Walker* hearing regarding his level of intoxication varied significantly from that given at trial. At trial, defendant testified that he had stopped drinking early on the morning of September 3 and was not intoxicated when he went to an office of the Michigan Employment Security Commission at approximately 10:15 a.m. Whereas, at the *Walker* hearing defendant testified that he drank a fifth of vodka between leaving the house and his arrest. At trial defendant initially stated that he did not drink at all and then testified that he consumed about a pint of alcohol. In addition, at trial defendant was able to remember in detail the events which occurred during the morning of the shooting. Finally, defendant's attitude and health during the time of the intelligence tests and the circumstances under which they were administered render the tests results of questionable accuracy.

## Issue III

Defense counsel requested that the trial court give the proposed standard criminal jury instruction regarding self-defense. 1 CJI, 7:9:01, p 7–159, provides in relevant part:

"(2) In considering whether or not the defendant acted in lawful self-defense, you should carefully consider all of the evidence in light of the following rules:

"(3) First, at the time of the act the defendant must

*honestly* believe that he is in danger of being killed or of receiving serious bodily harm." (Footnote omitted.) (Emphasis supplied.)

Instead, the trial court instructed the jury "that at the time of the act * * * the Defendant must honestly and reasonably believe he is in danger of being killed or receiving serious bodily harm". At the conclusion of the charge, defense counsel objected to the additional requirement that defendant must have "reasonably" believed he was in danger. The objection was also renewed, and rejected, in defendant's motion for a new trial and is now reasserted on appeal.

From the earliest Michigan cases to the most recent decisions of the Supreme Court and this Court, the test of whether the use of deadly force is excusable or justified has been generally stated to include the requirement that the defendant's belief be reasonable.[8] There are also cases, how-

---

[8] *People v Doe,* 1 Mich 451, 457 (1850) ("reasonable ground to believe"), *Pond v People,* 8 Mich 150, 173 (1860) ("a belief, arising from appearances which give him reasonable cause for it"), *Hurd v People,* 25 Mich 405, 412 (1872) ("had reason to believe, and did believe"), *People v Coughlin,* 67 Mich 466, 473–474; 35 NW 72 (1887) ("[T]he burden of proof was upon the prosecution to satisfy the jury * * * that no reasonable belief existed in defendant's mind"), *People v Harris,* 95 Mich 87, 90; 54 NW 648 (1893) ("reasonable apprehension"), *People v Tubbs,* 147 Mich 1, 10; 110 NW 132 (1907) ("reasonable cause to believe"), *People v Meert,* 157 Mich 93, 101; 121 NW 318 (1909) ("The belief * * * must not only be honest, but must be reasonable"), *People v Giacalone,* 242 Mich 16, 21; 217 NW 758 (1928) ("an honest and reasonable belief"), *People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975) ("reasonably to believe"), *People v Bright,* 50 Mich App 401, 407; 213 NW2d 279 (1973) ("reasonably believed"), *People v Shelton,* 64 Mich App 154, 156; 235 NW2d 93 (1975) ("reasonable belief"), *People v Perez,* 66 Mich App 685, 692; 239 NW2d 432 (1976) ("reasonable belief"), *People v Oster,* 67 Mich App 490, 501; 241 NW2d 260 (1976) ("Not only must the defendant believe himself to be in great danger, but that belief must also be reasonable under the circumstances."), *People v Sizemore,* 69 Mich App 672, 676; 245 NW2d 159 (1976) ("a reasonable and honest belief"), *People v Cooper,* 73 Mich App 660, 663; 252 NW2d 564 (1977) ("reasonable belief").

ever, that require only that the belief of the accused be honest or actual.[9] We agree with the committee responsible for the proposed jury instructions that the validity of a claim of self-defense ultimately depends upon whether the accused actually believes he is in danger of death or serious bodily harm. The fact that a defendant testifies that he honestly believed he was in danger does not require, as the prosecutor seems to argue, that the jury accept the defendant's statement as true. The jury must determine the credibility of that statement just as it does every other statement made by the defendant or any other witness. And certainly the jury may and should be instructed that it may consider the reasonableness of the alleged belief in determining whether or not it actually existed in the mind of the defendant at the time of the assault. The ultimate question to be decided by the jury, however, is not whether a reasonable man under the same or similar circumstances would have believed himself to be in danger but rather whether this defendant truly had such a belief.

In determining whether one claiming self-defense believed he was in danger, the trier-of-fact

---

[9] *Patten v People,* 18 Mich 314, 333; 100 Am Dec 173 (1869) ("if * * * he believed there was imminent danger of death or great bodily harm"), *People v Lennon,* 71 Mich 298, 300–301; 38 NW 871; 15 Am St R 259 (1888) ("[D]id the accused * * * honestly believe that he was in danger of his life, or great bodily harm, and that it was necessary to do what he did in order to save himself from such apparent threatened danger? If so, the inquiry is ended."), *People v Hull,* 86 Mich 449, 459; 49 NW 288 (1891) ("honestly believes"), *People v Piper,* 112 Mich 644, 645; 71 NW 174 (1897) ("honestly believing"), *People v Burkard,* 374 Mich 430, 438; 132 NW2d 106 (1965) ("honest belief"), *People v Vail,* 49 Mich App 578, 593; 212 NW2d 268 (1973), *rev'd on other grounds,* 393 Mich 460; 227 NW2d 535 (1975) ("honestly believed"), *People v Cameron,* 52 Mich App 463, 465; 217 NW2d 401 (1974) ("[U]nder all of the circumstances as they appeared to him at the time, he was in danger"), *People v Joeseype Johnson,* 75 Mich App 337, 344; 254 NW2d 667 (1977) ("honest belief").

must examine the circumstances as they appeared to the accused, not as they actually existed.

"The first inquiry necessary is one which applies equally to all of the grounds of defense; and is whether the necessity of taking life, in order to excuse or justify the slayer, must be one arising out of actual and imminent danger; or whether he may act upon a belief, arising from appearances which give him reasonable cause for it, that the danger is actual and imminent, although he may turn out to be mistaken.

\* \* \*

"Were a man charged with a crime to be held to a knowledge of all facts precisely as they are, there could be few cases in which the most innocent intention or honest zeal could justify or excuse homicide. The jury, by a careful sifting of witnesses on both sides, in cool blood, and aided by the comments of court and counsel, may arrive at a tolerably just conclusion on the circumstances of an assault. But the prisoner, who is to justify himself, can hardly be expected to be entirely cool in a deadly affray, or in all cases to have great courage or large intellect; and can not well see the true meaning of all that occurs at the time; while he can know nothing whatever concerning what has occurred elsewhere, or concerning the designs of his assailants, any more than can be inferred from appearances. And the law, while it will not generally excuse mistakes of law (because every man is bound to know that), does not hold men responsible for a knowledge of facts unless their ignorance arises from fault or negligence."

*Pond v People,* 8 Mich 150, 173–174 (1860), *Hurd v People,* 25 Mich 405 (1872), *People v Giacalone,* 242 Mich 16; 217 NW 758 (1928), *People v Shelton,* 64 Mich App 154; 235 NW2d 93 (1975).

Among the circumstances to be considered are the relative size and strength of the parties, *People v Harris,* 95 Mich 87; 54 NW 648 (1893), *People v Giacalone, supra,* see, *People v Joeseype John-*

*son,* 75 Mich App 337; 254 NW2d 667 (1977), and the mental condition of the accused as affected by prior altercations with the victim, *People v Tillman,* 132 Mich 23; 92 NW 499 (1902), *People v Giacalone, supra, People v Bell,* 14 Mich App 80; 165 NW2d 283 (1968), threats made by the victim to the accused, *Brownell v People,* 38 Mich 732 (1878), *People v Giacalone, supra, People v Cameron,* 52 Mich App 463; 217 NW2d 401 (1974), the defendant's personal knowledge of the victim's violent character and his awareness of the victim's general reputation for violence, *Hurd v People, supra, People v Harris, supra, People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961). In addition, the trier-of-fact, in evaluating the defendant's conduct, is to consider the defendant's prior experience in dealing with violent situations and the defendant's own particular level of courage. *People v Lennon,* 71 Mich 298; 38 NW 871; 15 Am St R 259 (1888), *People v Bennett,* 121 Mich 241; 80 NW 9 (1899).

Michigan case law clearly emphasizes a subjective analysis of the circumstances surrounding the use of deadly force. A jury which is instructed to assume the defendant's mental attitude and physical characteristics and to view the circumstances as they appeared to the defendant is in fact being instructed to decide whether the defendant is testifying truthfully in asserting an honest belief in imminent peril. While we do not believe that the instruction in the present case prevented the jury from making a proper determination of the asserted defense,[10] this Court is of the opinion that it

---

[10] Besides instructing the jury that defendant's actions were to be judged in light of the circumstances as they appeared to him, the court charged:

"In deciding whether at the time that the Defendant feared for his life or safety, you should consider all the surrounding circumstances,

would be better on retrial to use the language employed in the proposed standard jury instruction. See, Michigan Supreme Court Administrative Order, No 1977-1, 399 Mich, lxxii (1977).

## Issue IV

During trial defense counsel submitted to the court an instruction setting forth the defense theory of the case. The court refused to give it, stating that the instruction contained a recital of evidentiary matters and was too long. The court ruled that the instruction would be reduced without eliminating the defense theories.

During its charge to the jury, the trial court mentioned that a claim of self-defense was asserted and enumerated the legal principles involved. Defense counsel did not object to the court's refusal to give the requested instruction.

In his motion for a new trial, defendant challenged the court's decision. The court upheld its earlier ruling on the basis that the instruction submitted was a recital of facts as contended for by the defendant.

It is well-recognized that a defendant is entitled

---

all the conditions of the parties, all the prior relations, and their [o]ngoing relations that night, whether or not one was armed with a dangerous weapon and the other wasn't, or both were, or whether the other party had the means to injure the Defendant in the nature of any attack or threat that was made against the party, the previous acts of brutality or threats or anything of that nature that may have existed of which the Defendant was aware.

"In this connection there has been evidence introduced in the case regarding alleged past acts of violence by James Baker, and bothering the Defendant and other persons in that those alleged past acts were known to the Defendant, and you may consider that evidence. Whether the Defendant reasonably believed the Plaintiff to be a person of cruelty and violence, you may consider such evidence as bearing on the likelihood that James Baker threatened the Defendant with bodily harm, and the reasonableness of the Defendant's fear for his health and safety."

to have the jury instructed on his theory of the case if such an instruction is requested and supported by competent evidence. *People v McIntosh,* 400 Mich 1; 252 NW2d 779 (1977), *People v Hoefle,* 276 Mich 428; 267 NW 644 (1936). See, *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). The question presently before us is whether a theory of the case consists of the factual propositions advanced by a party or the legal principles governing the validity of a claim or defense.

GCR 1963, 516 provides:

".1 At or before the close of the evidence, any party may, or at any time the Court reasonably directs, the parties shall file written requests that the court instruct the jury on the law as set forth in the request.

\*   \*   \*

".7 It is the duty of the court to present to the jury the issues in the case and the theories of the parties. At the close of the evidence each party shall submit to the court a statement of the issues and his theory of the case as to each issue. \* \* \* It shall be submitted *in addition to requests for instructions submitted under subrule 516.1.* The statement shall set forth *as issues* only those *disputed propositions of fact* which are supported by the evidence. The statement of *the theory may include those claims supported by the evidence or admitted."* (Emphasis supplied.)

GCR 1963, 516.7 has been held applicable to criminal proceedings. GCR 1963, 785.1(1), *People v Savoie,* 75 Mich App 248; 255 NW2d 11 (1977). See, *People v Trammell,* 70 Mich App 351; 247 NW2d 311 (1976). When the two sections of the court rule are read together, it is clear that the law by which the case is to be decided is distinguishable from a party's theory.

The proposed standard criminal jury instructions provide:

"The theory of the defense, if requested in writing, must be given if supported by any evidence. Counsel should submit a short *factual* statement embodying their theory." 1 CJI p 3–33. (Emphasis supplied.)

Finally, in *People v Welke,* 342 Mich 164, 169; 68 NW2d 759, 761 (1955), the Supreme Court stated:

"[R]eversible error was committed by the trial court's refusal to state the theory of the defendant's case. The court's instructions were confined to the law applicable."

See, also, *People v Cummins,* 47 Mich 334; 11 NW 184 (1882), *People v Hoefle, supra, People v McIntosh, supra.*

On retrial, the circuit court is directed to give the factual theory of the defense if supported by any evidence.

## Issue V

Besides challenging the admissibility of his statements in his motion *in limine,* defendant also requested that the prosecutor be ordered to refrain from referring to defendant's prior criminal record. During argument on the motion, the trial court indicated that defendant's record consisted of a 1950 conviction for unlawfully driving away an automobile and a 1957 conviction for attempted breaking and entering. The court ruled that the earlier conviction could not be used to impeach the defendant because of its remoteness. The prosecutor, however, was to be allowed to use the later conviction. Although defense counsel argued that the 1957 conviction was an invalid guilty plea, he gave no reason for the allegation. The court ruled,

therefore, that the presumption of the validity of the conviction prevailed.

Subsequently, during direct examination, defense counsel asked defendant if he had pled guilty to attempted breaking and entering in 1957 and defendant responded affirmatively.

In his motion for a new trial defendant argued that the trial court erred in ruling on the motion *in limine* because of the date of the conviction and because it was based on a guilty plea obtained in violation of defendant's right to counsel. During oral argument on the motion, the circuit court held a hearing pursuant to *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), regarding the validity of defendant's second claim. Defendant testified that he did not have the assistance of a lawyer at the time of his plea; he was unable to remember whether he was advised of the availability of appointed counsel. The trial court found defendant's proofs unpersuasive and further held that it had not abused its discretion in ruling that the 1957 conviction could be used for impeachment purposes.

On appeal, defendant renews his argument that the conviction was invalid and could not be used for impeachment purposes.

This Court agrees with the conclusion of the lower court that defendant failed to present sufficient evidence to require the prosecution to establish the constitutional validity of the conviction. *People v Moore, supra, People v Henry,* 395 Mich 367; 236 NW2d 489 (1975).

On appeal defendant does not reassert his contention that the trial court in permitting the conviction to be used for impeachment purposes abused its discretion. Nevertheless, this Court notes that the remoteness of the conviction dimin-

ishes the value of such evidence in demonstrating the credibility of the accused. *People v Penn,* 71 Mich App 517; 248 NW2d 602 (1976). See, *People v Townsend,* 60 Mich App 204; 230 NW2d 378 (1975). On retrial, therefore, the prosecution should not be permitted to use the conviction for impeachment purposes.

Reversed and remanded.