PEOPLE v PEREZ

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO SILENCE—COM-
   MENT—DIRECT EXAMINATION—CROSS-EXAMINATION—APPEAL
   AND ERROR.

   A criminal accused has the constitutional right to remain silent
   when he is arrested and faced with accusation and his silence
   may not be used against him; and where the defendant makes
   no allegations on direct examination of what was said or was
   not said at the time of his arrest, prosecutorial cross-examina-
   tion on why he did not tell the police his version of the facts
   when arrested is a clear violation of that right.

2. CRIMINAL LAW—RIGHT TO SILENCE—TRIAL TESTIMONY—INCONSIST-
   ENCY—IMPEACHMENT.

   A defendant's silence at the time of his arrest may be properly
   used for impeachment of the defendant's testimony at trial
   only where that silence was wholly inconsistent with the de-
   fendant's statements on direct examination; the fact that he
   did not make a statement may be shown only to contradict his
   assertion that he did.

3. CRIMINAL LAW—RIGHT TO SILENCE—TRIAL TESTIMONY—INCONSIST-
   ENCY—LACK OF MEMORY—APPEAL AND ERROR.

   There is absolutely no inconsistency between a defendant's state-
   ment at trial that he did not remember whether he made a
   statement at the time of his arrest and testimony by other
   witnesses that defendant did in fact make no statement when
   arrested, and a prosecutor's use of defendant's silence against
   him through cross-examination and closing argument in such a
   situation constitutes reversible error.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 29 Am Jur 2d, Evidence § 638 *et seq.*
[4] 40 Am Jur 2d, Homicide §§ 519–521.
   Duty of trial court to instruct on self-defense, in absence of request
   by accused. 56 ALR2d 1170.
[5] 29 Am Jur 2d, Evidence §§ 340, 344.
[6] 40 Am Jur 2d, Homicide § 140.
[7] 40 Am Jur 2d, Homicide § 41 *et seq.*

4. Criminal Law—Homicide—Self-Defense—Jury—Circumstances
  —Reasonable Belief.

   Two aspects which should be emphasized in instructing a jury on
   self-defense in a homicide trial are (1) that the self-defense
   justification for homicide is based on the circumstances as they
   appeared to the defendant, and not as they actually existed,
   and (2) those circumstances as they appeared to the defendant
   must result in a reasonable belief that he, the defendant, is in
   danger of death or serious bodily harm.

5. Evidence—Rebuttal of Good Character—Specific Bad Acts.

   It is proper to rebut the evidence presented by a defendant
   concerning his good character in issue, but a defendant's proof
   of general reputation cannot be rebutted by showing specific
   bad acts of the defendant.

6. Homicide—Self-Defense—Violent Acts of Deceased—Knowl-
  edge of Defendant—Direct Connection.

   A trial judge should exclude testimony concerning violent acts of
   a homicide victim where self-defense is claimed unless the
   defendant shows that he knew of those acts or they were
   directly connected with the homicide.

7. Homicide—Conviction of Manslaughter—Retrial—Greater
  Charge.

   A conviction of manslaughter operates as an implied acquittal of
   a greater charge of murder, and upon being granted a new trial
   the defendant cannot again be charged with the higher offense.

Appeal from Monroe, James J. Kelley, J. Submitted November 4, 1975, at Lansing. (Docket Nos. 20636, 20637.) Decided January 26, 1976. Leave to appeal applied for.

Rudy Perez was convicted of manslaughter and assault with intent to do great bodily harm less than murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Rostash,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, by

*Dennis M. Powers,* Special Assistant Attorney General), for the people.

*Marc L. Goldman,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and BRONSON and R. M. MAHER, JJ.

BRONSON, J. Defendant was bound over on a charge of "open murder", MCLA 767.44; MSA 28.984, and MCLA 767.71; MSA 28.1011, and assault with intent to commit murder, MCLA 750.83; MSA 28.278. He was found guilty by a jury of manslaughter, MCLA 750.321; MSA 28.553, and assault with intent to do great bodily harm less than murder, MCLA 750.84; MSA 28.279. He was sentenced to concurrent terms of 10 to 15 years and 6 to 10 years, respectively.

On the night of October 6, 1973, defendant was driving his girl friend, Gloria Ferdin, and her mother, Alice Ferdin, to their home. They were heading west on a two-lane dirt road when a car driven by Pablo Torres and Martin Garcia, neighbors of defendant and the Ferdins, approached from the other direction. As both vehicles reached a one-lane bridge, they stopped. Defendant and the Ferdins testified that the other car had forced them off the road by swerving into the wrong lane. Martin Garcia testified that Torres, who was driving, had stopped by the side of the road to let defendant's car pass.

Defendant emerged from his car after taking a gun from the floorboard. Martin Garcia testified that defendant was angrily shouting about being forced off the road, and immediately shot and killed Torres as he exited the vehicle. According to Garcia, he too was shot and wounded as he got out

of the other side of the car. Defendant and the Ferdins then fled.

Defendant admitted shooting these two men, but gave a different version of the story. He stated that he grabbed his gun because he had just been run off the road by a car, and that he did not recognize its occupants at that time. When he got out of the car, he recognized his neighbors, but Garcia began swearing at him, and pulled a knife. Defendant stated that he shot Garcia when Garcia took several steps toward him and Torres when Torres ran towards him with a board in his hand threatening to kill him.

Neither Gloria Ferdin nor Alice Ferdin saw the firing of the second shot. Both testified, however, that Garcia put his hand in his pocket as he emerged from the car, and was shot when he took two or three steps toward defendant. The Ferdins and defendant stated that they drove away to get help.

After his arrest, defendant gave a statement to the police indicating that defendant had shot Garcia when Garcia suspiciously put his hand in his pocket. Torres was shot while getting out of the car. Defendant admitted he may have acted hastily. Nothing in the statement was said about Torres coming at defendant with a board and Garcia attacking him with a knife. When defendant was asked to sign a written statement, he refused and requested an attorney.

A police officer first testified as to defendant's statement upon arrest. Then, during direct examination, defendant was asked if he told the police during questioning that Garcia had pulled a knife. Defendant responded that he did not remember if he did or not. On cross-examination, the prosecutor asked defendant if he had told the police about

either the knife or the board. Defendant again said he could not remember.

During closing argument, the prosecutor directly commented on defendant's silence with respect to the knife and the board:

"And in a statement that Rudy gave to the officers, Patterson and Carlson, when he said, perhaps I acted too hasty, you might wonder if it might not be a natural thing to say when you're arrested and in jail for shooting two people, to say, that is, if it did happen as he has so slowly and deliberately testified for us here, that 'Officer, the only reason I did it is one came after me with an open knife and the other one came after me with a board two feet long'.

"But the officers never heard this. Only now, almost four months later, it is his defense that is, but when he is in the jail talking to the officers he never tells them this. Probably that could be for one of two reasons, that either he didn't think of it or either it didn't happen."

Defendant contends that the prosecutor's cross-examination and closing argument constituted an impermissible comment on his exercise of his constitutional right to remain silent. We agree, and reverse his conviction.

A criminal accused has the constitutional right to remain silent when he is arrested and faced with accusation, and his silence may not be used against him, *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966). Violation of that right clearly results from prosecutorial cross-examination of the defendant asking him why he did not tell the police his version of the facts when arrested, *if* defendant makes no allegations on direct examination as to what was said or was not said at the time of his arrest, *People v Seales,* 16 Mich App 572; 168 NW2d 428 (1969), *People v McColor,* 36 Mich App 455; 194

NW2d 99 (1971) (Judge, now Justice, Levin's dissenting opinion), *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). We must decide here whether defendant's statement on direct examination that he *could not remember* whether or not he told the police his version of the facts takes this case outside the general rule.

Two recent Michigan Supreme Court cases control our decision. *In People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), defendant was convicted of robbing a doughnut shop at knifepoint. Defendant claimed that his closed knife fell from his pocket when he was getting out his money, and that the proprietress jumped to the conclusion that he was attempting a robbery. He alleged that he was unable to calm her down after she became hysterical, so he left with his own money. He was apprehended by the police as he was leaving.

Graham testified on direct examination that he attempted to tell the police his side of the story at the shop, in the police car, and upon his arrival at the cell block. The trial judge allowed several police officers to testify that defendant refused to say anything to them. The *Graham* Court held that defendant's silence was properly used for impeachment pursuant to the reasoning of *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

The Supreme Court in *Graham* emphasized that such impeachment was proper only where defendant's silence was "wholly inconsistent" with defendant's statements on direct examination:

"We now must turn to the question of whether defendant Graham's testimony at trial was inconsistent with the statement he made to Detective Baeyens. The question of inconsistency is first of all a question within the discretion of the trial judge. *Grunewald v United*

*States* [353 US 391; 77 S Ct 963; 1 L Ed 2d 931 (1957)], *supra,* 423. At trial, the defendant testified that he continually attempted to give his version of the episode in the doughnut shop, but none of the policemen would even permit him to speak. He painted a picture of an innocent individual who attempted at every turn to explain a basic misunderstanding.

"The testimony of Detective Baeyens is wholly inconsistent with the defendant's statements at trial. Baeyens testified that in fact approximately six hours after his arrest the defendant was given an opportunity to tell a policeman his version of what had occurred. The defendant refused to speak at all. This refusal to speak is inconsistent with his testimony at trial that he was constantly attempting to explain to the police what had occurred. Therefore such refusal to speak was properly admitted for the purpose of impeaching the defendant's credibility.

"Defendant says he never denied that he was unwilling to tell his story to Detective Baeyens, and consequently he never said anything inconsistent to the testimony that Baeyens gave in alleged rebuttal. However, his whole posture of building up this desire to tell his story to police officers was certainly inconsistent with his unwillingness to talk to Detective Baeyens. Hence rebuttal testimony was permissible.

"In our holding today, we stress that the defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial." 386 Mich, at 457–458. (Footnote omitted.)

In a more recent case, *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), *Graham* is distinguished. The language employed by the Court in doing so is instructive. They stated:

"We will not condone conduct which directly or indirectly restricts the exercise of the constitutional right to remain silent in the face of accusation. 'Nonutterances' are not statements. The fact that a witness did not make a statement may be shown only to contradict

his assertion *that he did."* 390 Mich, at 359. (Emphasis added.)

Defendant's statement that he could not remember whether he told his story to the police is not an "assertion that he did". There is absolutely no inconsistency between defendant's testimony as to a lost memory and testimony that defendant in fact made no statement to the police. This case, then, falls within the confines of the general rule reaffirmed in *Bobo.* The prosecutor's use of defendant's silence against him through his cross-examination and closing argument constitutes reversible error.

Defendant also contends that the jury was improperly instructed on self-defense. Without deciding whether the instructions given were reversibly erroneous, we think that two aspects of self-defense should be consistently emphasized in the instructions upon retrial. First, the self-defense justification for homicide is based upon the circumstances as they appeared to defendant, and not as they actually existed, *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965), *People v Sangster,* 33 Mich App 712; 190 NW2d 317 (1971). Second, those circumstances as they appeared to the defendant must result in a reasonable belief that he, the defendant, is in danger of death or serious bodily harm, *People v Lenkevich,* 394 Mich 117, 124; 229 NW2d 298 (1975), *People v Shelton,* 64 Mich App 154; 235 NW2d 93 (1975), *People v Bright,* 50 Mich App 401, 406; 213 NW2d 279 (1973).

Defendant contends that the trial judge erred in allowing the prosecutor to call a rebuttal witness to testify as to a previous incident in which defendant lost his temper. The defendant did not object to the rebuttal witness's testimony and thus the issue is not preserved for review. However,

since the issue will probably arise again at retrial our decision will be helpful. The prosecutor's justification for the testimony is that it was proper to rebut the evidence presented by the defendant as to his good character. Once a defendant has placed his character in issue, it is proper for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed. *People v Mitchell,* 44 Mich App 679; 205 NW2d 876 (1973). However, where, as here, the defendant puts his character in issue by proof of general reputation, the rebuttal testimony offered by the prosecution cannot be proven by showing specific bad acts by defendant, McCormick, Evidence (2d ed), § 191, pp 455–459, *People v Hill,* 258 Mich 79, 84; 241 NW 873 (1932).

Defendant next argues that the trial judge improperly excluded testimony that Martin Garcia was involved in a knife fight the day before the present incident. Unless defendant shows that defendant knew of that incident or that it was directly connected with the homicide, the trial judge should again exclude such evidence at the new trial, *People v Knott,* 59 Mich App 105; 228 NW2d 838 (1975).

Defendant claims that the trial judge erred in submitting the charge of first-degree murder to the jury, arguing that there was no evidence to show premeditation. We need not discuss that issue here. Upon a trial for murder, a conviction of manslaughter operates as an "implied acquittal" on the greater charge, and upon a new trial the defendant cannot be charged with the higher offense, *Green v United States,* 355 US 184; 78 S Ct 221; 2 L Ed 2d 199 (1957), *Price v Georgia,* 398 US 323; 90 S Ct 1757; 26 L Ed 2d 300 (1970), *People v McMiller,* 389 Mich 425, 430, 435; 208 NW2d 451

(1973). All questions as to the sufficiency of the evidence to establish the crime of first-degree or second-degree murder are moot.

Defendant raises several other alleged errors. We have explored them in detail, but find that they do not merit discussion.

Reversed and remanded.