PEOPLE v KERLEY

Docket No. 78-3883. Submitted December 6, 1979, at Grand Rapids.—
Decided January 22, 1980. Leave to appeal applied for.

Bruce W. Kerley was convicted of first-degree murder, Calhoun
Circuit Court, Stanley Everett, J. Defendant appeals, alleging
that the trial court should have granted defendant's motion for
a directed verdict of acquittal, that the trial court failed to
define adequately the terms premeditation and deliberation,
that the trial court should have allowed defendant to testify to
the decedent's general reputation for violence and erroneously
limited the detail to which defendant could testify as to specific
acts of violence by the decedent, and that the trial court erred
in its instructions to the jury on self-defense. *Held:*

1. Sufficient evidence was presented on the elements of
premeditation and deliberation to avoid a directed verdict of
acquittal; when the evidence is viewed in the light most favora-
ble to the prosecution, a rational trier of fact could have found
that the essential elements of the crime were proven beyond a
reasonable doubt.

2. The instruction given regarding premeditation and deliber-
ation was adequate.

3. The defendant had lived in the community and known the
decedent for too short a time to be qualified to testify as to the
decedent's general reputation in the community for violence.
Defendant was allowed to testify about specific acts of violence
by the decedent which the defendant had heard about. The

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 548-550, 552-554.
[2, 3] 29 Am Jur 2d, Evidence § 343.
    40 Am Jur 2d, Homicide § 301 *et seq.*
    Admissibility of evidence as to other's character or reputation for
      turbulence on question of self-defense by one charged with as-
      sault or homicide. 1 ALR3d 571.
[4] 75 Am Jur 2d, Trial §§ 727, 728, 925.
[4, 5] 40 Am Jur 2d, Homicide §§ 519, 520.
    Duty of trial court to instruct on self-defense, in absence of request
      by accused. 56 ALR2d 1170.

limitation which the trial court placed on this testimony was not an abuse of discretion.

4. The trial court's instruction on self-defense adequately conveyed to the jury that the defendant's actions were to be judged from the circumstances as they appeared to the defendant, which is the proper standard by which an instruction on self-defense is to be considered.

5. The defendant alleges that an instruction on communicated withdrawal should have been given even though it was not requested. In this case the testimony was conflicting as to whether the defendant was withdrawing from the conflict in which he was involved or whether he had reasonably informed his adversary, the decedent, of his intention to withdraw. An instruction on communicated withdrawal was not necessary.

Affirmed.

1. CRIMINAL LAW — DIRECTED VERDICT OF ACQUITTAL.

The proper standard to be employed in ruling on a motion for a directed verdict of acquittal is that the evidence presented by the prosecution up to the time the motion is made is to be viewed in a light most favorable to the prosecution and that a determination be made as to whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.

2. HOMICIDE — EVIDENCE — REPUTATION OF DECEDENT.

A defendant in a trial for homicide was not qualified to testify as to the general reputation of the decedent in his community where the defendant had known the decedent only three weeks and had lived in the same community as the decedent for only those three weeks prior to the killing.

3. HOMICIDE — EVIDENCE — DECEDENT'S ACTS OF VIOLENCE.

A defendant in a trial for homicide was properly allowed to testify about specific acts of violence on the part of the decedent which the defendant had heard about and which he claimed led to his being afraid of being harmed by the decedent.

4. CRIMINAL LAW — DEFENSES — SELF-DEFENSE — INSTRUCTIONS TO JURY.

The test of whether or not a jury instruction on self-defense is proper is whether the language of the instruction, when read as a whole, makes it clear that the defendant's conduct is to be judged from the circumstances as they appeared to the defendant, not as they would have appeared to a third party.

5. Criminal Law — Defenses — Self-Defense — Aggressors —
   Withdrawal From Conflict — Instructions to Jury.

   An aggressor or initiator of a conflict, in order to revive his right
   to assert a defense of self-defense, must not only have with-
   drawn from the conflict but must also have clearly communi-
   cated his withdrawal to his adversary; where the testimony is
   conflicting as to whether the defendant had withdrawn from a
   conflict or had reasonably informed his adversary of his intent
   to withdraw an instruction to the jury on "communicated
   withdrawal" is not necessary in the absence of a request for
   such an instruction.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James D. Norlander,* Prosecuting Attorney, and *Samuel I. Durham, Jr.,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendant on appeal.

Before: Bronson, P.J., and Allen and R. M. Maher, JJ.

Allen, J. Following a three-day trial by jury, defendant was found guilty of first-degree murder contrary to MCL 750.316; MSA 28.548. On June 28, 1979, he was sentenced to prison for life, and he appeals of right. He raises four claims of error.

On Friday evening, September 30, 1977, defendant shot and killed his brother-in-law, Lyn Amos. The shooting occurred in the kitchen of defendant's sister, Denise, where Denise and Amos had been living since their marriage some two weeks earlier. There was friction between the deceased and defendant over an alleged beating inflicted on Denise by the deceased. Defendant had arrived at the apartment earlier that evening with records. Present was the deceased, his 15-year-old brother, Phillip, and his 13-year-old sister, Jennell. Following some drinking by the deceased and defendant,

and what defendant alleged were antagonistic comments by the deceased, defendant left the apartment and went to his home where he secured a shotgun. He returned to the apartment but first left the gun in some bushes outside the building. He found Lyn and the two children in the living room.

Shortly thereafter defendant went back outside, secured the gun, and returned to the living room where he announced, "I heard you want to kick my ass", or words to that effect. The deceased responded by rising from the chair. At this point the testimony becomes conflicting. Defendant testified that when the deceased got up, he quickly retreated to the kitchen intending to go out the back door which he knew would jam unless opened slowly, that he had his back to the kitchen and was attempting to open the back door when he looked backward, saw the deceased six feet away coming towards him, and fired in self-defense. On the other hand, Jennell testified that when defendant entered the living room "he had the gun and pointed it at Lyn". Jennell also testified that after the defendant got to the kitchen, he goaded the deceased by calling to deceased, "come on, come on out". Both young people stated the shot was fired while defendant was standing in the back door with his foot holding the door open. According to Jennell, while defendant was holding the door open, he was aiming the gun at the deceased.

1. *Proper Standard for Ruling on Motion for Directed Verdict of Acquittal.*

Defendant contends that the evidence of premeditation and deliberation was so insufficient that defendant's motion for a directed verdict of acquittal should have been granted. We disagree. While there has been a division of opinion as to the

proper standard to be employed in ruling on a motion for a directed verdict of acquittal, *e.g.,* compare *People v Milton,* 81 Mich App 515, 517; 265 NW2d 397 (1978), with *People v Royal,* 62 Mich App 756, 757-758; 233 NW2d 860 (1975), the Supreme Court in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), defined the proper standard as follows:

"[T]he trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *[People v] Garcia,* [398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, [v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979)]."

Viewing the evidence in the light most favorable to the prosecution in the instant case, the record indicates that sufficient evidence was presented by the prosecution on the elements of premeditation and deliberation to avoid a directed verdict of acquittal under the standard set forth above.

2. *Adequacy of Trial Court's Definition of the Terms "Premeditation" and "Deliberation", in Absence of Objection.*

Though it would have been better had the trial court followed the CJI in defining the terms premeditation and deliberation, we find the instruction given was adequate. In support of our conclusion herein we refer to *People v Bodley,* 38 Mich App 27, 31-32; 195 NW2d 803 (1972), *People v Fields,* 64 Mich App 166, 169-170; 235 NW2d 95 (1975), *People v Collins,* 43 Mich App 259, 269; 204 NW2d 290 (1972). *Milton, supra,* is distinguishable

on the instruction issue since there, unlike the instant case, the basic error was the trial court's failure to distinguish first-degree murder from second-degree murder.

3. *CJI 7:9:10—General Reputation and Specific Acts of Past Violence of Deceased.*

Defendant contends that the trial court erred when it (a) prevented defendant from testifying as to the deceased's general reputation for violence in Battle Creek, and (b) limited the detail to which the defendant could testify as to specific acts of violence committed by decedent, which acts gave defendant reason to fear the deceased. Defendant had only lived in the community of Battle Creek three weeks, had only known deceased for three weeks and had not talked with anyone concerning decedent in Lansing where defendant had lived prior to coming to Battle Creek. Based on these facts, defendant was obviously disqualified to testify about decedent's general reputation, and the court so held. *People v Walters,* 223 Mich 676; 194 NW 538 (1923), *People v Perez,* 66 Mich App 685, 693; 239 NW2d 432 (1976), *lv den* 397 Mich 824 (1976), 1 Wharton's Criminal Evidence (13th ed), § 236, pp 511-512.

After making a separate record without the jury being present, the court did allow defendant to testify about specific acts of violence which defendant had heard about from defendant's family. Defendant stated he only heard about specific acts of violence from his own family. This testimony was properly admitted by the trial judge. *People v Walters, supra, People v Knott,* 59 Mich App 105, 108-110; 228 NW2d 838 (1975). See *People v Cellura,* 288 Mich 54, 64; 284 NW 643 (1939). The court excluded only one incident, that being an occasion when deceased, while intoxicated, had

taken defendant's mother, father, and sister on a high-speed car ride and threatened that he was taking them to hell. We do not find the omission of this single incident prejudicial. Nor do we find that the trial court's exercise of discretion, in limiting the detail with which the specific acts of violence could be described, constituted reversible error.

4. *CJI 7:9:01—Self Defense, and CJI 7:9:04— Communicated Withdrawal, Adequacy of Instructions Thereon in Absence of Objection.*

Defendant contends that in its instructions to the jury on self-defense, the trial court erred in four particulars,[1] despite the fact that no objection was made and no alternate instruction was requested. We find defendant's claim without merit as to items (B) and (D). However, the alleged error as to claims (A) and (C), and in particular (A), present close questions. The trial court's instruction on item (C) was:

"In justification of the offense here charged against the defendant, he has interposed a plea of self defense. To make the plea available it must appear that the defendant was without fault on his part. If he, himself, was the aggressor in the conflict, he cannot invoke the doctrine of self defense as an excuse for the killing, unless at that time he *reasonably believed in his own mind* that he was in imminent danger of losing his own life or suffering from grievous bodily injury, and there was no way for him to retreat, as he saw it, and his only safety lie *[sic]* in firing the shot which caused the death of Lyndale Amos. The degree of danger which

---

[1] Defendant's brief subdivides this issue into components A, B, C and D as follows: (A) failure of the court to instruct *sua sponte* on withdrawal; (B) failure to define the terms "aggressor" and "assault"; (C) defendant's belief of death or harm must be an honest rather than a reasonable belief; (D) the cumulative effect of errors A-B-C resulted in manifest injustice even though no objection was made at trial.

must be feared is serious bodily harm or death." (Emphasis added.)

Citing CJI 7:9:01(3) and the commentary thereto at pages 191-194, defendant argues that error was committed because the court used the words "reasonably believed" rather than "honestly believed". See also *People v Robinson,* 79 Mich App 145, 156-161; 261 NW2d 544 (1977). For many years, Michigan case law alternately approved instructions using either the term "reasonably believed", *People v Shelton,* 64 Mich App 154, 156; 235 NW2d 93 (1975), *People v Perez, supra,* or "honestly believed", *People v Burkard,* 374 Mich 430, 438; 132 NW2d 106 (1965), *People v Robinson, supra.* But as appears from the commentary to CJI, it is not the magic words "honestly" or "reasonably" which determine whether the instruction is proper. Instead, the test is whether the language, when read as a whole, makes it clear that defendant's conduct is to be judged from the circumstances as they appeared to the defendant rather than as they would appear to a third party. As was stated in *Perez, supra:*

"Without deciding whether the instructions given were reversibly erroneous, we think that two aspects of self-defense should be consistently emphasized in the instructions upon retrial. First, the self-defense justification for homicide is based upon the circumstances as they appeared to defendant, and not as they actually existed. [citations omitted] Second, those circumstances as they appeared to the defendant must result in a reasonable belief that he, the defendant, is in danger of death or serious bodily harm." 66 Mich App at 692.

The language used by the court was "reasonably believed in his own mind". As such, and given the fact that, unlike the situation in *Robinson,* no

objection was made, we believe the jury understood that defendant's justification for firing the gun was to be based on the circumstances as they appeared ("in his own mind") to the defendant.

A more difficult question is posed as to item (A). Defendant's theory was that he took the gun to deceased's apartment, not because he intended to shoot his brother-in-law, but because he feared the deceased's violent temper, and that as soon as deceased rose, threatening, from his chair, defendant retreated to the kitchen where he was trying to get out the back door when deceased advanced towards him and he shot in self-defense. Defendant argues that the jury may well have believed that when defendant entered the living room armed with the gun, he was the aggressor and therefore the jury was misled by the court's instruction that if the defendant was the aggressor, "he cannot invoke the doctrine of self-defense". Defendant asserts that even if he were the aggressor in the first instance, the doctrine of self-defense may still be invoked if the aggressor subsequently withdraws from any further encounter with his victim and reasonably makes the fact of his withdrawal known to the victim. In legal parlance this is known as the doctrine of "communicated withdrawal after provocation of conflict".[2] A jury instruction reflecting this doctrine is set forth in CJI 7:9:04. The issue before us is whether a CJI 7:9:04 instruction should have been given by the trial court even though no request was made.

In *People v Peoples,* 75 Mich App 616, 620; 255 NW2d 707 (1977), this Court in a 2-1 opinion held that on the facts of that case, a communicated withdrawal instruction should have been given

---

[2] For discussion of the doctrine of communicated withdrawal see citations and authorities set forth in footnote 3 of *People v Peoples,* 75 Mich App 616, 621; 255 NW2d 707 (1977).

even in the absence of a request therefor, and in the absence of an objection to the instruction given. The evidence of that defendant's withdrawal was clear and uncontested.[3] In the case before us it is certainly not clear that defendant had abandoned his assault on deceased with a gun. According to the two other witnesses to the shooting, defendant had opened the door and was holding it open with his foot. Nothing prevented him from going out the door. Even if one assumes that defendant was retreating, and in good faith had given up the initial assault, there is no evidence that defendant effectively communicated this intent to the deceased.

We refuse to extend the holding in *Peoples* to a situation where, as here, the testimony is conflicting as to whether the defendant was withdrawing from the conflict or had reasonably informed his adversary of his intent to withdraw. The doctrine of communicated withdrawal may not be invoked unless the aggressor's intent to withdraw is clearly made known to his victim.

"The aggressor in or initiator of the conflict, in order to revive his right to self-defense, must not only withdraw, he must also announce or otherwise communicate his withdrawal or desire for peace to his adversary. In other words, the initial aggressor must withdraw or abandon the conflict in such a way that the fact of withdrawal is perceived by his opponent, so that his adversary is aware that he is no longer in any danger

---

[3] Defendant Peoples and the deceased had been drinking with friends in a private home. They went outside and engaged in a fistfight. Upon reentering the home, defendant fired a shot over the deceased's head. After the shot was fired, the other persons present separated the two and persuaded defendant to leave the home. The deceased was restrained from going out to face defendant. Some one to five minutes after defendant left the house, the deceased was allowed to leave. In the instant case, the defendant had not left and only seconds intervened between the argument in the living room and the fatal shooting in the kitchen.

from the original aggressor." 3 Am Jur, Proof of Facts 2d, § 3-705, p 712.

"Nor is this all; the aggressor must inform his antagonist of his purpose to withdraw from the conflict. If the circumstances are such that he cannot do this, it is attributable to his own fault and he must abide by the consequences. A mere momentary cessation of hostilities with no bona fide, clearly expressed intention to withdraw from the conflict is not sufficient to justify the original aggressor in killing in self-defense." 40 Am Jur 2d, Homicide, § 150, pp 438-439.

The majority opinion in *Peoples* concluded by stating that a communicated withdrawal instruction (CJI 7:9:04) was only necessary "where the particular factual situation supports such an instruction". 75 Mich App at 624-625. In our judgment, the facts in the instant situation do not support such an instruction.

Affirmed.